913 So.2d 710 (2005)
Sabrina POTTER, Appellant,
v.
CITY OF ORMOND BEACH/Self-Insured, Appellee.
No. 1D04-4636.
District Court of Appeal of Florida, First District.
October 25, 2005.
Kelli K. Biferie, Esq. of Bichler & Kelley, P.A., Winter Park, for Appellant.
Douglas G. Rawnsley, Esq. of Douglas G. Rawnsley, P.A., Daytona Beach, for Appellee.
*711 LEWIS, J.
Claimant, Sabrina Potter, appeals an order of the judge of compensation claims ("JCC") denying her claim for impairment benefits for her ventricular ectopy pursuant to an eight percent impairment rating. Claimant first argues that the JCC erred in apportioning the eight percent impairment rating for the ventricular ectopy because appellee, the City of Ormond Beach, previously accepted the condition as compensable pursuant to section 112.18(1), Florida Statutes. We agree and, therefore, reverse the JCC's order and remand. Given our disposition with respect to this issue, we decline to address claimant's remaining arguments on appeal.
Claimant, who worked for appellee as a firefighter until November 6, 2001, has a history of ventricular ectopy, which was described below as an arrhythmia, and hypertension. Claimant's ventricular ectopy began in 2001 while she was employed as a firefighter. Appellee accepted both conditions as being compensable. After a dispute arose with respect to the proper impairment ratings for claimant's conditions, the JCC appointed an expert medical advisor ("EMA") to determine the proper ratings.
Dr. Calle, the EMA, assigned claimant a five percent impairment rating for the hypertension and an eight percent impairment rating for the ventricular ectopy. However, with respect to the latter condition, Dr. Calle apportioned half of the eight percent impairment rating because "[t]here is [sic] some activities that can trigger increased arrhythmia like . . . lack of sleep and intake of caffeine and cigarette smoking and increased level of stress because of the response to adrenaline." Thus, Dr. Calle "gave [claimant] 50 percent [of the eight percent impairment rating] probably related to stress since . . . any activity could be stressful, but can increase the frequency of [claimant's] palpitations, of her anxiety." When asked on cross-examination why he apportioned the eight percent impairment rating and ultimately chose a four percent impairment rating for the ventricular ectopy, Dr. Calle replied in part, "Part of it could be the stress of the job."
In his order, the JCC accepted Dr. Calle's testimony that the eight percent impairment rating should be apportioned to four percent. This appeal followed.
Claimant correctly contends on appeal that the JCC erred in apportioning the eight percent impairment rating for her ventricular ectopy because appellee had previously accepted the condition as compensable pursuant to section 112.18(1), Florida Statutes (2001), which the parties and the JCC term the "Heart/Lung Bill." This statute, which applies to workers' compensation proceedings, provides:
Any condition or impairment of health of any Florida state, municipal, county, port authority, special tax district, or fire control district firefighter or state law enforcement officer caused by tuberculosis, heart disease, or hypertension resulting in total or partial disability or death shall be presumed to have been accidental and to have been suffered in the line of duty unless the contrary be shown by competent evidence. However, any such firefighter or state law enforcement officer shall have successfully passed a physical examination upon entering into any such service as a firefighter or state law enforcement officer, which examination failed to reveal any evidence of any such condition. Such presumption shall not apply to benefits payable under or granted in a policy of life insurance or disability insurance, unless the insurer and insured have negotiated *712 for such additional benefits to be included in the policy contract.
The supreme court has explained:
The presumption contained in section 112.18(1), Florida Statutes (1975), affects the burden of persuasion. It embodies the social policy of the state which recognizes that firemen are subjected during their career to the hazards of smoke, heat, and nauseous fumes from all kinds of toxic chemicals as well as extreme anxiety derived from the necessity of being constantly faced with the possibility of extreme danger. The legislature recognized that this exposure could cause a fireman to become the victim of tuberculosis, hypertension, or heart disease.
Caldwell v. Div. of Retirement, Fla. Dep't of Admin., 372 So.2d 438, 440-41 (Fla.1979).
Contrary to appellee's argument, it did not rebut the presumption found in section 112.18(1) through Dr. Calle's testimony because it had previously acknowledged the compensable nature of the ventricular ectopy pursuant to the statute. As claimant contends, it is unreasonable to apportion a part of her impairment rating for the ventricular ectopy as being work-related and a part as being non-work-related when appellee had previously accepted the entire condition as compensable by virtue of section 112.18(1). This is not a situation where claimant's ventricular ectopy was pre-existing.[1] Nor is there any evidence in the record of some intervening circumstance that affected the compensable nature of claimant's condition.
Accordingly, we REVERSE the JCC's order and REMAND for further proceedings.
WEBSTER and BENTON, JJ., concur.
NOTES
[1] Section 440.15(5)(b), Florida Statutes (2001), which addresses apportionment, provides:

If a compensable permanent impairment, or any portion thereof, is a result of aggravation or acceleration of a preexisting condition, or is the result of merger with a preexisting impairment, an employee eligible to receive impairment benefits under paragraph (3)(a) shall receive such benefits for the total impairment found to result, excluding the degree of impairment existing at the time of the subject accident or injury or which would have existed by the time of the impairment rating without the intervention of the compensable accident or injury. The degree of permanent impairment attributable to the accident or injury shall be compensated in accordance with paragraph (3)(a). As used in this paragraph, "merger" means the combining of a preexisting permanent impairment with a subsequent compensable permanent impairment which, when the effects of both are considered together, result in a permanent impairment rating which is greater than the sum of the two permanent impairment ratings when each impairment is considered individually.